IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| vs. | ) | C/R No. 2:05-1321-DCN |
| | ) | |
| Philip Fitzgerald Adams Jr., | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Philip Fitzgerald Adams Jr. moves this court to suppress evidence seized from him on May 9, 2005. A hearing on defendant's motion was held on July 7, 2006. The parties having fully briefed the issue, the court rules as follows.

## I.     FACTUAL BACKGROUND

On May 9, 2005, at approximately 11:35 a.m., North Charleston Police Department (NCPD) Officer Chris Talbott was on patrol. He observed defendant and two other males sitting in a vehicle parked on the side of the road. As Talbott drove by, he noticed the front and rear passengers crouch down in the vehicle. Without activating his blue lights or siren, Officer Talbott turned around, drove up behind the vehicle, and approached in an effort to speak with the occupants. Officer Talbott testified that as he approached the vehicle, he noticed defendant (in the driver's seat) move his left hand either under or behind the seat. As Officer Talbott began speaking with the front seat passenger, he again noticed defendant reach under his seat. Officer Talbott testified that defendant kept his hand under the seat for the duration of the discussion with the front seat passenger. Concerned that defendant had access to a weapon or was concealing a weapon or drugs, Officer Talbott requested assistance. Officers Steven Baxter and Jennifer Varner arrived. The three occupants were ordered out of the vehicle; as they

exited, Officer Talbott saw a marijuana cigarette on the driver's side back seat floorboard. The vehicle was then searched. Officer Varner located what was later determined to be a stolen, loaded 9mm Hi-Point pistol and defendant's South Carolina driver's license under the driver's seat. According to both passengers, the pistol belonged to defendant. Defendant told police that the pistol belonged to one of the passengers.

On December 16, 2005, the federal grand jury indicted Adams in a one-count indictment charging him with possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Defendant filed the present motion to suppress on June 9, 2006. Defendant does not challenge Officer's Talbott's justification to walk up to defendant's vehicle. Rather, defendant's motion challenges Officer Talbot's decision to pull the three occupants from the car.

## II.     LEGAL ANALYSIS

"Police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989). The officer must "point to specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 22 (1968). In determining the legality of an investigative stop, the court must consider the "totality of the circumstances - the whole picture." Sokolow, 490 U.S. at 7. While this burden is less than required for probable cause, it requires more

than just an "inchoate and unparticularized suspicion or hunch." Terry, 392 U.S. at 27. Rather, the officer must possess some "minimal level of objective justification" for the stop. I.N.S. v. Delgado, 466 U.S. 210, 216 (1984). "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Sokolow, 490 U.S. at 9.

The Government cites three factors supporting defendant's detention. First, Officer Talbott testified that the vicinity in which defendant was parked is a high crime area, including drug and weapons possession. Second, Officer Talbott testified that as he walked to the car he noticed defendant move his left hand either behind or underneath his seat. Third, Officer Talbott testified that defendant kept his left hand under the seat as he spoke with the passengers. These actions and circumstances caused Officer Talbot concern that defendant was concealing weapons and/or drugs, and led to his request for backup and the subsequent discovery of the marijuana cigarette and ultimately, the gun.

Defendant contends his case is similar to United States v. Sprinkle, 106 F.3d 613 (4th Cir. 1997), in which the Fourth Circuit found insufficient reasonable suspicion for the stop. In Sprinkle, officers cited five factors to justify their stop: (1) police saw defendant in a car with a known drug dealer; (2) the car was in a high narcotics crime area; (3) the parties in the car were huddled near the center console with hands close together; (4) the driver put his head down and hand up to obscure his face when police walked by, and (5) the car drove away as the officers walked by. The Fourth Circuit noted that the police were able to see the parties' hands through the windows and that the occupants did not try to conceal anything. The court concluded that "without some

3

stronger indication of criminal activity," the huddling and attempt to conceal identity did not constitute reasonable suspicion.

In contrast, the government cites United States v. McCoy, No. 99-4198, 2000 WL 51286 (4th Cir. Jan. 24, 2000) (unpublished). Police noticed McCoy in a heated argument with another man in a high crime area. McCoy was in the driver's seat of a van; the other man was outside the van. When police ordered the other man to depart, "McCoy bent forward and extended his arm under the passenger seat of the van. Fearing that McCoy was reaching for a weapon, the officers ordered him out of the van." McCoy, 2000 WL 51286 at *1. The Fourth Circuit observed

> Sprinkle is distinguishable because the officers in this case saw McCoy attempting to hide or remove something from under the seat, whereas in Sprinkle the officers could see that no unlawful activity was occurring inside the vehicle. Accordingly, the search and questioning were proper, and the motion to suppress was correctly denied.

Id. Similarly, Officer Talbott testified he saw defendant twice attempting to hide, remove, conceal or reach something under the seat. Officer Talbott also testified that these acts made him concerned that defendant was concealing weapons or drugs or had access to a weapon under the seat. As such, Sprinkle is not controlling. The court finds the totality of circumstances justifies reasonable suspicion of criminal activity.

### III.  CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that defendant's motion to suppress be **DENIED**.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

July 17, 2006
Charleston, South Carolina